UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAISHIA JACKSON,
Plaintiff,

-v-

FINANCIAL HEALTH NETWORK,
Defendant.

25-CV-10017 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Naishia Jackson, proceeding *pro se*, brings claims of discrimination and retaliation against Financial Health Network ("FHN") under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin Code § 8-101, *et seq.* (*See generally* ECF No. 14.)

Before the Court is FHN's motion to dismiss Jackson's Second Amended Complaint. (ECF No. 23.) For the reasons that follow, FHN's motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from Jackson's Second Amended Complaint and are presumed true at the motion to dismiss stage. See *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam). Because Jackson proceeds *pro se*, the Court also considers factual allegations included in her opposition to FHN's motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 64 (2d Cir. 2014) (reversing dismissal of a *pro se* plaintiff's complaint where the allegations in his "complaint and his opposition brief . . . plausibly allege" a claim); *see also Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *1 n.3 (S.D.N.Y.

Sep. 28, 2022) ("[T]he Court's mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's additional materials, such as his opposition memorandum." (cleaned up)).

On or about June 2019, FHN hired Jackson as an Associate of Financial Health in Manhattan. (ECF No. 14 ("SAC") ¶ 8.) In April 2021, Jackson sought and received medical accommodation and disability-related leave after being hospitalized for a work-related injury. (*Id.* ¶ 9; ECF No. 29[1] at 3.) During her leave, Jackson submitted medical notices to Human Resources at FHN and communicated with Human Resources regarding her anticipated return date. (SAC ¶ 9.) Jackson then returned to work in the summer of 2021 with approved accommodations, including a reduced work schedule. (*Id.* ¶ 10.)

Jackson was placed on the Financial Services Solutions ("FSS") team in September 2021. (*Id.* ¶ 11.) FHN Vice President Marissa Walster was assigned to be Jackson's manager, though Jackson "did not work or report directly to" Walster on her projects. (*Id.*) Throughout Jackson's time on the FSS team, she regularly had meetings with Walster. (*Id.* ¶ 12.) In one such meeting, Walster "expressed frustration with [Jackson's] reduced schedule" and explained that she "ha[d] additional work but wanted to know how much time [Jackson] had or [Jackson's] schedule." (*Id.*) In late 2021, FHN Chief People Officer Carman Weathington emailed Jackson and later had a conversation with her during Jackson's bereavement leave. (*Id.* ¶ 13.) In that conversation, Weathington relayed that Walster had raised concerns about Jackson's reduced schedule and had asked when Jackson would return without accommodation. (*Id.*)

[1] Jackson filed two identical oppositions on the docket. (*See* ECF Nos. 28-29.) For consistency, the Court cites the later docket entry when referring to Jackson's opposition.

Additionally, Jackson alleges that she was "subjected to increased scrutiny and often reminded" of Walster's "desire to have [Jackson] available for additional work hours." (*Id.* ¶ 14.) Jackson alleges that she "experienced differential treatment to counterparts while actively working," as "the quality of [her] work was consistently questioned and not accepted like others despite performing at the same level as others." (*Id.*) For example, in January 2022, Jackson was given a 20-hour project completion timeline, which she alleges was "not a reasonable timeframe" and was not imposed on "other counterparts." (*Id.* ¶ 15.) Jackson contextualizes this instance as emblematic of her experience from late 2021 until July 2022, during which Jackson "was given unreasonable deadlines[] and differential treatment compared to other colleagues." (*Id.* ¶ 16.) Jackson was also placed on a Performance Improvement Plan ("PIP") and faced repeated instances in which Walster "expressed hostility toward [Jackson's] reduced-schedule accommodation" and pressured her "to work full-time despite having provided medical documentation." (*Id.*)

In June 2022, Jackson again went on medical leave for a work-related injury, and she remained on medical leave until April 27, 2023. (*Id.* ¶¶ 18-20.) Jackson underwent surgery in September 2022, and Jackson's physician provided documentation that Jackson was temporarily disabled. (*Id.* ¶ 19.) Throughout the ten months between June 2022 and April 2023, Jackson's physicians repeatedly sent documents certifying her temporary disability. (*Id.*) After the final such notice, Jackson "anticipated returning to work around June 2023." (*Id.* ¶ 20.)

FHN stopped engaging in the ADA interactive process in December 2022 and did not discuss alternate accommodations, transitional return, or reassignment options. (*Id.* ¶ 19.) FHN then sent a letter terminating Jackson on April 27, 2023. (*Id.* ¶ 21.) At the time of Jackson's termination, FHN failed to provide her with required health insurance notices, unemployment

benefit information, or payout information regarding her accrued vacation and sick time. (*Id.*) Jackson was provided with such information after her counsel emailed FHN. (*Id.*) After Jackson's termination, her role remained unfilled for many months. (*Id.*)

### B. Procedural History

On February 6, 2024, Jackson filed a charge of discrimination against FHN with the U.S. Equal Employment Opportunity Commission ("EEOC") and the New York City Commission on Human Rights. (*Id.* ¶ 22; *see also id.* at 5-6.) The EEOC issued Jackson a notice of her right to sue on September 4, 2025. (*Id.* ¶ 23; *see also id.* at 7-8.)

Jackson then filed suit in this Court on December 1, 2025. (ECF No. 1.) On January 26, 2026, Jackson filed her Second Amended Complaint, the operative complaint in this action. (*See* SAC.) On May 1, 2026, FHN filed a motion to dismiss the Second Amended Complaint (ECF No. 23), accompanied by a memorandum of law (ECF No. 25 ("Mem.")) and a declaration attaching exhibits (ECF No. 24). On May 26, 2026, Jackson filed her opposition (ECF No. 29 ("Opp.")), accompanied by a declaration attaching exhibits (ECF No. 30). On June 12, 2026, FHN filed a reply in further support of its motion to dismiss. (ECF No. 33 ("Reply").)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not sufficiently state a claim to survive a motion to dismiss under Rule 12(b)(6). *Id.*

The Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In addition to the factual allegations made in the four corners of the complaint, the Court may consider a document that the complaint attaches as an exhibit, incorporates by reference, or heavily relies upon such that the document is integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Finally, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## III. Discussion

### A. Timeliness of Jackson's Claims Under the ADA

At the outset, FHN argues that most of Jackson's claims under the ADA are time-barred. (Mem. at 12-13.)

"As a predicate to filing suit under the ADA, a plaintiff must first file a timely charge with the [EEOC] or a state or local agency capable of granting relief." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 258 (S.D.N.Y. 2015) (quotation marks omitted). Because New York has "a designated state or local agency with jurisdiction to consider discriminatory employment claims, the limitations period for filing charges with the EEOC is . . . 300 days." *Id.* (quotation marks omitted). "This 300-day time bar operates as a statute of limitations for . . . ADA . . . claims." *Kleinman v. Fashion Inst. of Tech.*, No. 16-CV-4348, 2017 WL 3016940, at

*7 (S.D.N.Y. July 14, 2017) (quotation marks omitted); *see also McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43 (2d Cir. 2020) (summary order) ("Pursuant to Title VII and the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC within 300 days of a discriminatory act.").

Here, Jackson filed her charge of discrimination with the EEOC on February 6, 2024. (SAC at 5-6.) Accordingly, any claim premised on discrete adverse employment actions that took place before April 12, 2023, or 300 days before the filing of the EEOC charge, is time-barred. *See Kirk v. Mount Vernon City Sch. Dist.*, No. 23-CV-7441, 2024 WL 3794591, at *5 (S.D.N.Y. Aug. 13, 2024); *see also Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649-50 (2d Cir. 2011) (summary order) ("[T]he Complaint fails to allege a violation of the ADA that falls within the 300-day window."). A significant portion of the discriminatory conduct alleged in Jackson's ADA claims occurred before April 12, 2023. For example, Weathington allegedly called and expressed Walster's frustration with Jackson's reduced schedule "at the end of 2021"; Walster pressed for Jackson to work full-time "[i]n or around January of 2022," and Jackson was placed on a performance improvement plan and faced "unreasonable deadlines" and "differential treatment compared to other colleagues" "[f]rom late 2021 until approximately late July 2022." (SAC ¶¶ 13, 15-16.) Because this conduct occurred outside the 300-day window, such conduct cannot serve as "adverse employment actions" underlying claims under the ADA. *See Hoffman*, 443 F. App'x at 649-50.

Jackson suggests that the "continuing violation" doctrine salvages her claims from being time-barred. (*See* Opp. at 5-6.) But "[d]iscrete acts such as termination . . . constitute[] a separate actionable 'unlawful employment practice,'" so plaintiffs "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Accordingly, "[a]ll prior discrete discriminatory acts are untimely filed and no longer actionable." *Id.* at 115. However, "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* Thus, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered." *Id.* at 117.

It is unclear whether the Second Amended Complaint intended to assert a claim for hostile work environment. (*See* SAC ¶ 16 (alleging Walster "repeatedly expressed hostility toward Plaintiff's reduced-schedule accommodation"); *but see id.* ¶ 21 (alleging claims for "disability discrimination, failure to accommodate, and retaliation" but not hostile work environment).) Even if it did, Jackson does not allege that any facts supporting a claim for hostile work environment occurred in the 300-day period. Indeed, the Second Amended Complaint expressly cabins the only intimation of a hostile work environment "[f]rom late 2021 until approximately July 2022." (*Id.* ¶ 16.) That makes sense, since Jackson went on medical leave "[o]n or around June 2022," such that she was ostensibly outside the reaches of any work environment from then on. (*Id.* ¶ 18.) Because the Second Amended Complaint does not allege that any facts pertaining to hostile work environment occurred in the 300-day window, the Court concludes that the Second Amended Complaint fails to state a timely, cognizable claim for hostile work environment.

That said, Jackson is not without any factual predicates to premise claims for discrimination or retaliation under the ADA. Jackson's termination occurred on April 27, 2023. (*Id.* ¶¶ 20-21.) Additionally, Jackson had meetings with Walster "[t]hroughout [Jackson's] tenure on the FSS team," and in one such meeting, Walster "expressed frustration with [Jackson's] reduced schedule." (*Id.* ¶ 12.) While Jackson does not affirmatively allege that her

meetings with Walster occurred within the 300-day window—and the Court has some doubt that they did, seeing as Jackson was out on medical leave in April 2023—the Court will consider that allegation timely for the purposes of this motion in light of the Court's dual obligations to "draw[] all reasonable inferences in favor of the plaintiff," *Koch*, 699 F.3d at 145, and "to construe a *pro se* complaint liberally," *Harris*, 572 F.3d at 72. Finally, while FHN stopped engaging in the ADA interactive process "in December 2022," the Second Amended Complaint makes no allegation that FHN outright denied an accommodation or transitional return at that time. (SAC ¶ 19.) Accordingly, the Court will also consider that allegation timely for the purposes of this motion. *Accord Lascala v. Guidehouse Inc.*, No. 25-CV-2882, 2026 WL 787829, at *4 (S.D.N.Y. Mar. 20, 2026) ("Put simply, [FHN] identifies no discrete rejection of [Jackson's] accommodation request that would trigger the 300-day clock.").

In sum, the Court considers timely any ADA claims premised on Jackson's termination, Jackson's meetings with Walster, and FHN's refusal to engage in the ADA interactive process. Jackson's ADA claims premised on any other alleged adverse employment actions are dismissed as time-barred.

**B. Disability Discrimination Under the ADA**

The ADA prohibits discrimination on the basis of disability in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Second Amended Complaint alleges discrimination under both an "adverse employment action" theory and a "failure to accommodate" theory of discrimination. (SAC ¶¶ 19-21.)

**1. Adverse Employment Action**

To state a plausible claim of discrimination by way of "adverse employment action," Jackson must establish that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was

qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) (quotation marks omitted). Under the ADA, a plaintiff experiences an adverse employment action "because of" her disability if, "'but for' the disability, the adverse action would not have been taken." *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019).

As an initial matter, Jackson cannot base a claim of discrimination on instances in which Walster "expressed frustration with [Jackson's] reduced schedule" (SAC ¶ 12), because mere criticism is not an "adverse employment action." *See Amna v. N.Y. Dep't of Health*, No. 08-CV-2806, 2011 WL 4592787, at *6 (E.D.N.Y. Sept. 30, 2011) ("It is well-established that being yelled at or having one's work criticized do not constitute adverse employment actions[.]"), *aff'd sub nom. Amna v. N.Y. Dep't of Health*, 505 F. App'x. 44 (2d Cir. 2012) (summary order); *see also Tieu v. N.Y.C. Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 324 (S.D.N.Y. 2024) ("'Adverse employment action' has the same meaning under the ADA as it does under Title VII.").

But Jackson does state a claim of discrimination based on her termination. Neither party disputes that FHN is covered by the ADA, that Jackson suffers from a disability under the ADA, or that Jackson's termination constitutes an adverse employment action. The viability of Jackson's claim thus hinges on the third prong: whether Jackson was "qualified to perform the essential functions of the job, with or without reasonable accommodation." *Kinneary*, 601 F.3d at 156 (quotation marks omitted). FHN says no, arguing that Jackson failed to allege that she was a "qualified individual" at the time of her termination because she was not able to perform the essential functions of her job, with or without a reasonable accommodation. (Mem. at 15.)

True, the inquiry into whether Jackson was a qualified individual under the ADA takes place "at the time of the alleged adverse employment action." *Silver v. Entergy Nuclear Operations, Inc.*, 290 F. Supp. 3d 234, 244 (S.D.N.Y. 2017); *see also McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013) ("[T]he plaintiff must demonstrate that he or she could have performed these [essential] functions, with or without reasonable accommodation, at the time of the termination or discipline."). But "[c]ourts have found that medical leave can constitute a reasonable accommodation under the ADA." *Samuels v. Urban Assembly Charter Sch. for Computer Sci.*, No. 23-CV-1379, 2024 WL 4008165, at *9 (S.D.N.Y. Aug. 30, 2024) (collecting cases). The logical corollary is that, where the relevant accommodation is medical leave, the proper inquiry is whether leave "will be reasonably likely to enable the employee to return to work" *after* the conclusion of their leave. *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 186 n.6 (2d Cir. 2006).

The Court concludes that Jackson sufficiently pleads that she, after reasonable leave, would have been able to perform the essential functions of her job, such that she was "qualified" under the ADA. The Second Amended Complaint alleges that Jackson "anticipated returning to work around June 2023." (SAC ¶ 20.) "[D]rawing all reasonable inferences in favor of the plaintiff," *Koch*, 699 F.3d at 145, and construing "the submissions of a *pro se* litigant . . . to raise the strongest arguments that they *suggest*," *Triestman*, 470 F.3d at 474 (internal quotation marks and citations omitted), the Court interprets Jackson's allegations regarding an anticipated return by June 2023 as indicating meaningful progress in her recovery, such that "a longer period of leave[] could have assisted her" in "regain[ing] her ability to perform the requirements of her position." *Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 583 (W.D.N.Y. 2011).

FHN's argument that *Lascala v. Guidehouse Inc.* mandates a different result is unavailing. FHN is correct that this Court dismissed a disability discrimination claim in *Lascala* premised on the plaintiff's termination while on leave because "he ha[d] not shown that he was . . . qualified to perform the essential functions of the job, with or without reasonable accommodation" at the time of his termination. 2026 WL 787829, at *6 (quotation marks omitted). But the Court so ruled because the plaintiff's allegations did not "supply any basis for believing that, following a longer disability leave, [the plaintiff] would have been able to fulfill the requirements of his role." *Id.* Indeed, the plaintiff in *Lascala* pleaded the opposite: "[H]e was continuing to *strive* for improvements in his health," he "*wished* to *attempt* to recover from his disability," and any return to work would occur only "*if* . . . his health situation improved." *Id.* (quotation marks omitted and emphases added). These conjectural, waffling allegations failed to establish that a longer period of leave would allow the plaintiff to return to work and perform the essential functions of his job, such that he failed to "show[] that he was 'otherwise qualified'" under the ADA. *Id.* In contrast, Jackson's allegation that she "anticipated returning to work around June 2023" raises a reasonable inference that her health was improving, and that a reasonable, temporary leave would facilitate her return to work.[2] (SAC ¶ 20.)

Accordingly, FHN's motion to dismiss is denied as to Jackson's discrimination claim insofar as it is based on Jackson's termination, and is otherwise granted.

[2] It is true that Jackson states in her opposition that "[w]hether [she] would have returned in June 2023 is speculative" (*see* Opp. at 11), but the Court interprets that stray statement as an assertion that FHN failed to provide a reasonable accommodation in the form of extending her leave, rather than a concession that leave would not restore her ability to perform the essential functions of her job. This interpretation accords with the thrust of the Second Amended Complaint and Jackson's opposition papers, which contend that her leave "was medically monitored, finite in nature, and tied to an expected recovery trajectory—not an open-ended permanent inability to work." (Opp. at 8; *see also id.* at 11-12; SAC ¶¶ 20-21.)

### 2. Failure to Accommodate

The Court construes the Second Amended Complaint's factual allegations pertaining to FHN's failure to engage in the ADA interactive process and FHN's termination of Jackson (*see* SAC ¶¶ 19, 21) as asserting failure-to-accommodate claims. In essence, the Court understands the Second Amended Complaint to raise a discrimination claim based on FHN's "choice to terminate the plaintiff's employment, as opposed to making the accommodation of allowing [her] more time to heal from [her] injury." *Paige v. Garvan's Rock & Rye, LLC*, No. 24-CV-3189, 2025 WL 3201762, at *4 (S.D.N.Y. Nov. 14, 2025).

To state a claim of discrimination based on a "failure to accommodate" theory, Jackson must show that "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [her] employer refused to make a reasonable accommodation." *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (cleaned up).[3] In particular, because Jackson's claim is premised on FHN's "failure to engage in a sufficient interactive process," Jackson must show "that, at least with the aid of some identified accommodation, she was qualified for the position." *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009).

FHN contends that the Second Amended Complaint founders at the third and fourth prongs of this analysis because Jackson's leave extension request effectively asked for "an indefinite leave extension, which as a matter of law is not a reasonable accommodation."

---

[3] As discussed above, neither party disputes that FHN is subject to the ADA or that Jackson was disabled within the meaning of the ADA, and the Court concludes that the Second Amended Complaint sufficiently pleads that Jackson was qualified to perform the essential functions of her job with the reasonable accommodation of a longer, but still definite, leave.

*Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 181 (2d Cir. 2016). But antecedent to that legal conclusion is a factual question: Did Jackson's request, in fact, seek indefinite leave? The Court concludes that it cannot resolve such a fact-intensive inquiry based on the factual allegations raised at this nascent stage of litigation. Thus, dismissal is unwarranted.

To be sure, FHN resists this conclusion. FHN cites *Bodenmiller v. County of Suffolk* and *Forgione v. City of New York* for the proposition that courts have granted motions to dismiss on the basis that the plaintiff requested unreasonable, indefinite leave. (Mem. at 17.) But both *Bodenmiller* and *Forgione* are distinguishable. In *Bodenmiller*, the plaintiff "appear[ed] to concede" that his complaint "*might* be construed as alleging an entitlement" to indefinite leave. *Bodenmiller v. County of Suffolk*, No. 20-CV-414, 2023 WL 2214037, at *8 (E.D.N.Y. Feb. 15, 2023), *report and recommendation adopted*, No. 20-CV-414, 2023 WL 4763471 (E.D.N.Y. July 26, 2023). Jackson makes no such concession. (*See* Opp. at 13 ("Plaintiff was not permanently or indefinitely unable to work and anticipated a return to work in or around June 2023.").) And in *Forgione*, the complaint was "[b]ereft of any allegations that Forgione informed the defendants of how much leave he would need, what he would do during his leave, whether and how the leave would allow him to perform the essential functions of his job, or even precisely what his disability was." *Forgione v. City of New York*, No. 11-CV-5248, 2012 WL 4049832, at *9 (E.D.N.Y. Sep. 13, 2012). The same is not true here. The Second Amended Complaint establishes an expected return date of June 2023, the medical notes from Jackson's providers[4] detail her treatment following her shoulder surgery, and Jackson's allegation as to her return

[4] The Court may properly consider Jackson's medical notes because the Second Amended Complaint incorporates them by reference. *See Chambers*, 282 F.3d at 152-53. (*See* SAC ¶ 19 ("Plaintiff's physician repeatedly provided documentation showing Plaintiff was temporarily disabled.").).

timeline raises a reasonable inference that additional leave would provide the requisite time for her to heal and perform the essential functions of her job. (SAC ¶¶ 19-20; ECF No. 24-12.)

Finally, FHN appears to contend that the length of Jackson's leave—ten months at the time of her termination and a year at the time of her expected return date—and her inability to guarantee an end date for her leave render her requested leave unreasonable as a matter of law. (Mem. at 17.) The Court disagrees. "[A] number of courts in this Circuit have reasoned that a plaintiff's inability to precisely specify the date of return does not make [her] request for leave unreasonable, particularly when such a date is contingent on a doctor's approval and an improvement in one's medical condition." *Cayetano v. Fed. Express Corp.*, No. 19-CV-10619, 2022 WL 2467735, at *6 (S.D.N.Y. July 6, 2022) (quotation marks omitted). And "a request for leave is unreasonable as a matter of law only where the leave is for an extremely long period of time—exceeding a year at minimum—or when it is clear that even when the employee returns from such leave, they would be unqualified to perform the essential functions of their role." *Id.* Because Jackson's leave just approximates the length at which courts *may* deem leave unreasonable as a matter of law, the Court declines to dismiss her claim at this early stage without the benefit of a developed record. *See C.C. v. Google, LLC*, No. 24-CV-7811, 2025 WL 1938809, at *9 (S.D.N.Y. July 15, 2025) ("The reasonableness of a proposed accommodation is a fact-intensive question that is generally ill-suited for resolution on a motion to dismiss." (citing *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015))).

Thus, FHN's motion to dismiss Jackson's failure-to-accommodate claim is denied to the extent that it is based on Jackson's termination and FHN's refusal to engage in the ADA interactive process.

**C. Retaliation Under the ADA**

To state a claim for retaliation under the ADA, "a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Causal connection may be shown "either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). FHN does not dispute that Jackson engaged in protected activities by requesting leave and other accommodations such as her reduced schedule, that FHN was aware of Jackson's protected activities, or that Jackson suffered an adverse employment action in the form of termination.

Instead, FHN moves to dismiss Jackson's retaliation claim on the basis that the Second Amended Complaint "contains no non-conclusory allegations to support a causal connection between her termination and her protected activity." (Mem. at 18.) Jackson responds that she has sufficiently pleaded causal connection by alleging that FHN "terminated [her] employment while she was actively involved in the ADA leave process," in tandem with FHN's "documented supervisor hostility toward [her] request[s] for accommodations and its abandonment of the interactive process." (Opp. at 12.)

Jackson has sufficiently pleaded facts to support a causal connection between her various protected activities and her termination. First, the Court construes Jackson's submission of her

physician's note on March 30, 2023 as a request for an extension of her leave in light of her continued physical ailments. (*See* ECF No 24-12 at 2.) FHN fired Jackson on April 27, 2023, less than a month after that request. (*See* SAC ¶¶ 20-21.) At this early stage, this close temporal proximity between Jackson's protected activity and her termination "is sufficient to establish the required causal link." *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002). Helpfully, however, Jackson supplies additional evidence supporting causal connection: Jackson's allegations as to the various instances in which Walster "expressed frustration with [her] reduced schedule," inquired into "when [Jackson] would be returning without accommodations," and "pressured [Jackson] to work full-time despite [Jackson] having provided medical documentation" further evidence that Jackson's termination was the product of retaliatory intent. (*See* SAC ¶¶ 12-16.)[5] Thus, "[a]lthough [FHN] may ultimately succeed by articulating some legitimate, nondiscriminatory reason for her termination," Jackson "has met her burden on a motion to dismiss." *Samuels*, 2024 WL 4008165, at *10 (cleaned up).

Accordingly, the motion to dismiss Jackson's retaliation claim under the ADA is denied insofar as it based on Jackson's termination.

### D. Discrimination and Retaliation Under the NYSHRL and NYCHRL

FHN's sole argument pertaining to Jackson's state-law claims is that the Court "should decline to exercise supplemental jurisdiction over [her] claims under the NYSHRL and NYCHRL because her federal claims fail." (Mem. at 18-19.) Because the Court does not

[5] It is true that verbal comments must bear a "causal nexus to the termination decision" to raise an inference of discrimination. *Gates v. City of New York*, No. 20-CV-3186, 2021 WL 3774189, at *6 (S.D.N.Y. Aug. 25, 2021) (quotation marks omitted). At this stage, it is the Court's judgment that these comments, made by Jackson's direct supervisor, challenged the validity of her accommodations and are thus potentially "probative of discriminatory animus." *Id.* (quotation marks omitted).

dismiss the entirety of Jackson's claims under the ADA, the Court will retain supplemental jurisdiction over Jackson's claims under the NYSHRL and NYCHRL. *See Angeles v. Grace Products, Inc.*, No. 20-CV-10167, 2021 WL 4340427, at *1 n.1 (S.D.N.Y. Sep. 23, 2021) (Nathan, J.) ("Because the Court will not dismiss the ADA claim[s], it will continue to assert supplemental jurisdiction over Plaintiff's state law claim[s].").

## IV. Conclusion

For the foregoing reasons, FHN's motion to dismiss is GRANTED in part and DENIED in part. Jackson's discrimination and retaliation claims under the ADA are dismissed insofar as they are predicated on adverse employment actions that occurred prior to April 12, 2023. Jackson's discrimination claims under the ADA are also dismissed insofar as they are predicated on meetings in which Walster expressed frustration with Jackson's reduced work schedule. Finally, Jackson's hostile work environment claim—to the extent that the Second Amended Complaint asserted one—is dismissed. FHN's motion is DENIED as to all other claims.

FHN shall file an answer to Jackson's surviving claims within 14 days after the date of this Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at ECF No. 23.

SO ORDERED.

Dated: September 4, 2026
New York, New York

J. PAUL OETKEN
United States District Judge